IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

NILMA QUILES-MARTÍNEZ,

Plaintiff

v.                                                        CIVIL 03-1272 (SEC)

VÍCTOR RIVERA-HERNÁNDEZ, et al.,

Defendants

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the court on motion for summary judgment filed by co-defendant Julio César Cruz (hereinafter "Cruz") on February 15, 2005. (Docket No. 70.)  Also before the court are the motion for summary judgment filed by co-defendants Víctor Rivera-Hernández (hereinafter "Rivera") and Luis Piñot (hereinafter "Piñot") on February 28, 2005 (Docket No. 80) and the motion for summary judgment filed by co-defendant Juan L. Martínez-Martínez (hereinafter "Martínez").  (Docket No. 82.)  Plaintiff Nilma Quiles-Martínez (hereinafter "Quiles") filed a response in opposition to the three motions for summary judgment on April 29, 2005.  (Docket No. 94.)  The case was referred to me for a report and recommendation on June 3, 2005.  (Docket No. 102.)[1]

---

[1]I note that the order of referral issued by the court on June 3, 2005 (Docket No. 102) did not include co-defendant Martínez' motion for summary judgment.  I will consider said motion as if it was referred finding that it would be inefficient not to do it, specially in light of Quiles' opposition which covers all three motions for summary judgment.

CIVIL 03-1272 (SEC)                    2

## I.  FACTUAL BACKGROUND

Quiles brings the present action under 42 U.S.C. § 1983 against the co-defendants claiming that she was the subject of discriminatory and retaliatory actions by reason of her political affiliation to the New Progressive Party (hereinafter "NPP").  She also invokes this court's supplemental jurisdiction, 28 U.S.C. § 1367, to bring a cause of action under Articles 1802 and 1803 of the Puerto Rico Civil Code, 31 P.R. Laws. Ann. §§ 5141 and 5142.  Quiles requests damages in excess of $1,500,000 as well as injunctive and declaratory relief.  The following are the most relevant allegations in Quiles' complaint.

Quiles worked as a career employee of the Puerto Rico Department of Labor and Human Resources (hereinafter "the Department").  Co-defendant Rivera was at all relevant times to the facts alleged in the complaint, the Secretary of the Department.  Co-defendant Piñot on the other hand, was the Department's Deputy Secretary of Norms and Legal Affairs.  Co-defendant Martínez was the Director of the Department's Bureau for Employment Opportunity Development (hereinafter "the Bureau").[2]  Co-defendant Cruz was the Department's internal auditor at times relevant to the facts alleged in the complaint.

The complaint alleges that following the November 7, 2000 general elections in Puerto Rico, Sila María Calderón was elected governor, having run on the Popular

---

[2]The Bureau for Employment Opportunity Development manages a fund that is specifically apportioned to alleviate the unemployment problem in Puerto Rico.

CIVIL 03-1272 (SEC)                    3

Democratic Party's (hereinafter "PDP") ticket.[3]  She appointed co-defendant Rivera as Secretary of the Department.  At that time, Quiles had been working at the Bureau at least since 1996.  Between 1996 and 2000, Quiles worked as acting Director of the Bureau.  It is alleged that upon the arrival of the new administration and specifically of co-defendant Rivera, Quiles was deprived of her duties and a harassment campaign began against her.  The complaint states that on August 27, 2001, the plaintiffs in the case of <u>María Gómez-Candelaria, et al. v. José A. Rivera-Rodríguez et al.</u>, Civil No. 01-1319 (JP), obtained authorization from the court to interview Quiles in regards to the government's policy and treatment of the funds managed by the Bureau during the NPP administration.  Based on the information gathered by the plaintiffs in Civil No. 01-1391 (JP), the plaintiffs in that case amended their complaint on September 1, 2001 to include co-defendants Rivera and Piñot as defendants.  On September 13, 2001, the plaintiffs in Civil No. 01-1391 (JP) announced Quiles as a witness in that case.  However, after discovery, co-defendants Rivera and Piñot were voluntarily dismissed from the case.

On February 25, 2002, the defendants charged Quiles with having violated Puerto Rico's Governmental Ethics Law and the Department's regulations.  Quiles was informed through letter of Rivera's intention to terminate her from employment.  During that time, co-defendant Piñot is alleged to have orchestrated

---

[3]The PDP assumed the control of Puerto Rico's government after eight years of NPP control.

CIVIL 03-1272 (SEC)                    4

the investigation giving rise to the charges brought against Quiles. Said investigation was allegedly conducted with the sole purpose of harassing Quiles and terminating her from employment due to her political affiliation. During the investigation co-defendant Martínez allegedly failed to provide the information and documents that would have demonstrated that the charges brought against Quiles were unfounded. Co-defendant Cruz was the person who conducted the audit for the period in which Quiles acted as Director of the Bureau. Quiles claims that she was never interviewed as part of the investigation. It is further alleged that on February 25, 2002, the defendants made comments in the media accusing her of embezzlement without giving her an opportunity to respond to the charges against her. After a pre-termination hearing held on March 6, 2002, Quiles received a letter dated March 18, 2002 in which she was informed that she had been terminated from employment. The letter was signed by co-defendant Rivera.

Quiles also avers that she has been a public servant for almost 21 years and that she had never been the subject of disciplinary action. It is further alleged by her that the employment actions taken by the defendants were disproportionate and that the alleged violations revealed by the audit conducted against her were a pretext for political discrimination. According to the complaint, Quiles' affiliation to the NPP was well-known by the defendants, and she was substituted in her position by a member of the PDP. Quiles alleges that she has suffered severe damages because of what she characterizes as an unlawful termination, including the damage to her

CIVIL 03-1272 (SEC)                    5

reputation due to defendants' public statement accusing her of embezzlement. Finally, Quiles claims that the defendants all acted under color of state law and motivated by her political affiliation.

## II. PROCEDURAL BACKGROUND

Co-defendants all move for summary judgment.  First is the motion for summary judgment filed by co-defendant Cruz (Docket No. 70) in which he argues that Quiles has failed to state a claim under section 1983 inasmuch as she cannot prove that Cruz was personally involved in the alleged violation, namely, her discriminatory dismissal.  Cruz also claims to be shielded from liability in his personal capacity by the doctrine of qualified immunity and in his official capacity by Eleventh Amendment immunity.  Second is the motion for summary judgment filed by co-defendants Rivera and Piñot.  (Docket No. 80.)  These co-defendants maintain that summary judgment is appropriate because Quiles has failed to submit sufficient evidence to demonstrate a politically discriminatory animus in connection with the decision to terminate her employment.  According to these co-defendants, Quiles was terminated from employment because she negligently carried out her duties as an employee of the Department and in the process also exposed herself to a conflict of interest.  Rivera and Piñot also claim that even assuming that Quiles' conduct is ultimately found not to have been negligent, they acted reasonably under the circumstances and they are entitled to qualified immunity.  Finally, these co-defendants claim that Quiles is unable to submit enough evidence showing that the

CIVIL 03-1272 (SEC)                    6

reasons advanced for her dismissal are a pretext for political discrimination. Finally, co-defendant Martínez' motion for summary judgment parrots the arguments of co-defendant Cruz insofar as the former claims to be entitled to judgment as a matter of law on the following grounds: (1) that Quiles cannot demonstrate Martínez' personal involvement in the adverse employment action; (2) that qualified immunity shields him from liability in his personal capacity; and (3) that Quiles cannot obtain monetary relief against Martínez pursuant to the Eleventh Amendment to the United States Constitution.

In opposition, Quiles contends with respect to her first amendment cause of action that her statement of material facts when looked at in the light most favorable to her and the evidence submitted is sufficient to establish a prima facie case of political discrimination and to rebut defendants' Mt. Healthy[4] defense. She claims that a reasonable jury may infer from said evidence that defendants' alleged non-discriminatory reasons for her dismissal were a pretext to discriminate against her on the basis of her political affiliation. Furthermore, as to the qualified immunity defense, Quiles maintains that the right of a public employee not to be the subject of adverse employment actions due to his or her political affiliation is a clearly established right and has been so for a long time. As such, it is Quiles' position that defendants' entitlement to said defense cannot be resolved at this stage where issues

---

[4] Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1976).

CIVIL 03-1272 (SEC)                    7

of defendants' motivations for the adverse personnel action loom large.   Quiles
requests that summary judgment be denied against all defendants.

### III.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers
to interrogatories, and admissions on file, together with the affidavits, if any, show
that there is no genuine issue as to any material fact and that the moving party is
entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  To succeed on a
motion for summary judgment, the moving party must show that there is an absence
of evidence to support the nonmoving party's position.  Celotex Corp. v. Catrett, 477
U.S. 317, 325 (1986).  Once the moving party has properly supported its motion,
the burden shifts to the nonmoving party to set forth specific facts showing there is
a genuine issue for trial and that a trier of fact could reasonably find in its favor.
Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000).
The party opposing summary judgment must produce "specific facts, in suitable
evidentiary form," to counter the evidence presented by the movant.   López-
Carrasquillo v. Rubianes, 230 F.3d 409, 413 (1st Cir. 2000) (quoting Morris v. Gov't
Dev. Bank of P.R., 27 F.3d 746, 748 (1st Cir. 1994)).  A party cannot discharge said
burden by relying upon "conclusory allegations, improbable inferences, and
unsupportable speculation." Id.; see also Carroll v. Xerox Corp., 294 F.3d 231, 236-
37 (1st Cir. 2002) (quoting J. Geils Band Employee Benefit Plan v. Smith Barney
Shearson, Inc., 76 F.3d 1245, 1251 (1st Cir. 1993)) ("'[N]either conclusory

CIVIL 03-1272 (SEC)                    8

allegations [nor] improbable inferences' are sufficient to defeat summary judgment.").

The court must view the facts in light most hospitable to the nonmoving party, drawing all reasonable inferences in that party's favor. See Patterson v. Patterson, 306 F.3d 1156, 1157 (1st Cir. 2002). A fact is considered material if it has the potential to affect the outcome of the case under applicable law. Nereida-González v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993).

III.  APPLICABLE LAW AND ANALYSIS

A.  Political Discrimination Under Section 1983

I start this discussion with familiar principles. For a claim to be actionable under 42 U.S.C. § 1983, sufficient facts must be alleged showing that the action complained of was committed under color of state law and that said conduct worked a denial of rights secured by the United States Constitution. Romero-Barceló v. Hernández-Agosto, 75 F.3d 23, 32 (1st Cir. 1996). There are two aspects to the second prong: (1) there must be an actual depravation of a federally protected right; and (2) there must be a causal connection between defendants' conduct and the depravation of such right. Gutiérrez-Rodríguez v. Cartagena, 882 F.2d 553, 559 (1st Cir. 1989). Additionally, the causal connection element requires that plaintiffs establish for each defendant, that the defendant's own actions deprived the plaintiff of his or her protected rights. Id. at 562 (holding that liability may not be

CIVIL 03-1272 (SEC)                    9

predicated upon a theory of respondeat superior because a supervisor can be liable only for his own acts or omissions).

It is also firmly established that political patronage restrains a person's freedom of belief and association, core activities protected by the First Amendment of the United States Constitution. Padilla-García v. Rodríguez, 212 F.3d 69, 74 (1st Cir. 2000). Thus, the Supreme Court has been clear in holding that "nonpolicymaking public employees are constitutionally protected from adverse employment decisions on account of their political affiliation." Gómez v. Rivera-Rodríguez, 344 F.3d 103, 109-10 (1st Cir. 2003) (citing Rutan v. Republican Party of Ill., 497 U.S. 62, 75 (1990); Branti v. Finkel, 445 U.S. 507, 516-17 (1980); and Elrod v. Burns, 427 U.S. 347, 372-73 (1976)). A prima facie case of political discrimination is established by demonstrating that plaintiff (1) engaged in protected conduct and (2) that such conduct was a substantial or motivating factor in the adverse employment decision. See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. at 287; see also Padilla-García v. Rodríguez, 212 F.3d at 74. In other words, a plaintiff has to prove that his or her political persuasions were a substantial or motivating factor in the challenged action. Ortiz-Piñero v. Rivera-Arroyo, 84 F.3d 7, 11-12 (1st Cir. 1996). In this respect, to survive a motion for summary judgment, the plaintiff has to point to evidence in the record that would allow "a rational fact finder to conclude that the challenged personnel action

CIVIL 03-1272 (SEC)                         10

occurred and stemmed from a politically based discriminatory animus." Rivera-Cotto v. Rivera, 38 F.3d 611, 614 (1ˢᵗ Cir. 1994).

Once a prima facie case has been established, then the government employer is given an opportunity to show that it would have taken the same action regardless of plaintiff's political beliefs. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. at 287. The burden-shifting framework in Mt. Healthy goes directly to causation. Padilla-García v. Rodríguez, 212 F.3d at 74. Therefore, "even if a plaintiff meets his or her initial burden of [establishing] that political affiliation [or beliefs were] a motivating factor [in the adverse] employment decision, that is insufficient to establish discrimination as a matter of law because the plaintiff's case at that point does not 'distinguish[] between a result caused by a constitutional violation and one not so caused.'" Sánchez-López v. Fuentes-Pujols, 375 F.3d 121, 131 (1ˢᵗ Cir. 2004) (quoting Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. at 286). The plaintiff thus needs to show that there is a causal connection linking the adverse employment action to her political persuasions. See Torres-Ocasio v. Meléndez, 283 F. Supp. 2d 505, 515 (D.P.R. 2003) (citing LaRou v. Ridlon, 98 F.3d 659, 662 (1ˢᵗ Cir. 1996)).

B. Local Rule 56

Before entering into the discussion of the specific arguments advanced by the defendants, I note that in opposing defendants' motions for summary judgment, Quiles has failed to comply with Local Rule 56 (c) which provides in relevant part:

CIVIL 03-1272 (SEC)                    11

> A party opposing a motion for summary judgment shall submit with its opposition a separate, short and concise statement of material facts. The opposing statement shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule.

Local Rule 56 (c).  Furthermore, Local Rule 56 (e) states that "[f]acts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." Local Rules 56 (e).  Based on the above language, the First Circuit has upheld enforcement of this anti-ferret rule permitting the district court to treat the moving party's statement of material facts as uncontested if the non-moving party fails to properly controvert said material facts with his or her own statement and with record citations.  See Alsina-Ortiz v. Laboy, 400 F.3d 77, 80 (1st Cir. 2005); Cosme-Rosado v. Serrano-Rodríguez, 360 F.3d 42, 46 (1st Cir. 2004); Morales v. A.C. Orssleff's EFTF, 246 F.3d 32, 32-35 (1st Cir. 2001).  Indeed, the First Circuit has stated that "parties ignore [the anti-ferret rule] at their peril." Ruiz-Rivera v. Riley, 209 F.3d 24, 28 (1st Cir. 2000).

In this case, Quiles submitted what was purported to be her opposing statement to co-defendants' statements of material facts.  (Docket No. 94.)  In it, however, she limits herself to substantially conceding the moving parties' statement or what appear to be qualifications to and/or denials of a few of the co-defendants'

CIVIL 03-1272 (SEC)                              12

statements of facts.  She provides no record citations in support of her denials and

qualifications.  As such, co-defendants' statements of material facts are deemed

admitted and the analysis of their respective motions for summary judgment will be

performed against this backdrop.[5]

   A.  Cruz' Motion for Summary Judgment (Docket No. 70)

        The main contention in Cruz' motion for summary judgment is that Quiles has

not presented sufficient evidence to demonstrate his personal involvement in the

adverse employment action complained of.  Specifically, Cruz maintains that he is

mentioned in only three paragraphs of the factual allegations section of the

complaint.  Paragraph 20 alleges that Cruz was the internal auditor who conducted

an audit of the Bureau for the period in which Quiles was the Director of said office.

In paragraph 21, Quiles alleges that Cruz did not interview Quiles as part of the

audit.  In paragraph 37, Quiles alleged that all the actions and expressions were

undertaken by co-defendant Rivera "in cahoots with the other defendants" including

Cruz.  According to Cruz, these allegations are insufficient to grant any remedy to

Quiles and against him.  In addition, it is Cruz' position that the fact he conducted

the audit is, standing  alone,  insufficient  to  form  the  basis  of  a  political

_____

        [5]In addition to her unsupported opposing statement of material facts, Quiles
submitted 52 statements of material facts she claims are uncontested and show a
trial worthy factual dispute.  She provided record citations for such statements of
facts, however, I note that the only evidence relied on by Quiles was her own
deposition testimony.  Most of those statements are irrelevant to the main issues
before the court.

CIVIL 03-1272 (SEC)                    13

discrimination claim because it is uncontested that as an internal auditor, conducting audits is precisely one of his duties and responsibilities.  It is further claimed by Cruz that even if Quiles disagreed with the findings of the audit, that does not mean that he was personally involved in defendants' ultimate decision to terminate her.  He did not make any recommendations as to possible disciplinary actions to be taken against Quiles based on the findings of the audit because he does not have any authority, and making such a recommendation was beyond the scope of his duties.  Cruz submits that he did not participate in co-defendants' decision to terminate Quiles; therefore he was not personally involved.  Finally, Cruz contends that Quiles has not submitted sufficient evidence to establish that her affiliation to the NPP was a substantial or motivating factor in any adverse personnel action taken against her and in which Cruz might have been involved.

A review of the record shows that there is insufficient evidence demonstrating the existence of a genuine dispute of material facts regarding co-defendant Cruz' involvement in any adverse employment action taken against Quiles.  The complaint simply states that he was the Department's internal auditor, and that he conducted an audit for the period in which Quiles was the Director of the Bureau.  As part of his motion for summary judgment, Cruz submitted a statement of uncontested facts stating in relevant part that he was the Department's internal auditor who conducted an audit of the Bureau for the period during which Quiles was the director of said office. (Cruz' Statement of Uncontested Facts, Docket No. 70, at 2-3,

CIVIL 03-1272 (SEC)                    14

¶¶ 3 and 8.)  He also stated that he did not participate in Quiles' pre-termination hearing or in co-defendant Rivera's decision to terminate Quiles from her employment.  (Id. at 3, ¶¶ 9-10.)  In support of these propositions, Cruz presented as evidence a Job Description of his duties and responsibilities (Docket No. 70, Ex. 2) and his Unsworn Statement Under the Penalty of Perjury.  (Id., Ex. 3.)

        In opposition, Quiles submitted an "Answer to Defendants' Respective Statement[s] of Uncontested Facts."  (Docket No. 94.)  In the section addressing Cruz' statement, Quiles substantially admitted most of Cruz' uncontested facts and failed to provide any record citations pointing to evidence that would create a factual dispute.  (Id. at 3-4.)  Consequently, Quiles has failed to submit sufficient evidence demonstrating Cruz' involvement in any adverse employment action taken against her, see García-Sánchez v. Román-Abreu, 270 F. Supp. 2d 255, 262 (D.P.R. 2003); see also Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999); cf. Springer v. Seaman, 821 F.2d 871, 879 (1st Cir. 1987), abrogation recognized by Powell v. City of Pittsfield, 143 F. Supp. 2d 94 (1st Cir. 2001), or that her political affiliation was a substantial or motivating factor in any such action.  As to this issue, Cruz' motion for summary judgment should be GRANTED and the complaint should be dismissed against him in its entirety.  I need not address Cruz' qualified immunity and Eleventh Amendment arguments.  I only add that as this record stands, it appears that it is likely that Cruz would have been entitled to the protections of qualified immunity. Even if there was a violation of a clearly established constitutional right,

CIVIL 03-1272 (SEC)                    15

there can be no question that a reasonable official in Cruz' position was unlikely to understand that by conducting an audit, which was one of his main duties and responsibilities, he was violating Quiles' constitutional rights.

    B.  <u>Rivera and Piñots' Motion for Summary Judgment (Docket No. 80)</u>

    Co-defendants Rivera and Piñot argue that they are entitled to judgment as a matter of law because of Quiles' failure to submit sufficient evidence to demonstrate that part of the prima facie case requiring her to show that her political affiliation was a substantial or motivating factor behind the adverse employment action taken against her.  According to these co-defendants, Quiles' case relies solely on the "flawed, tenuous and simplistic presupposition" that it had to be political discrimination because she was a member of a political party different than that of the co-defendants.  Rivera and Piñot further submit that there is absolutely no evidence in the record demonstrating that Quiles' political affiliation was taken into consideration at the time of Rivera's decision to terminate her from employment. Piñot in particular asserts that there is no evidence of his personal involvement in any adverse employment action.  Furthermore, these co-defendants maintain that even assuming that Rivera was somehow motivated by political animus, the undisputed facts demonstrate that Quiles would have been dismissed from her employment regardless of her political convictions.  In other words, the findings of the audit conducted revealing a conflict of interest and certain violations to Puerto Rico Ethics and Personnel Law as well as to regulations of the Department, were

CIVIL 03-1272 (SEC)                    16

legitimate non-discriminatory reasons justifying Quiles' termination.  Finally, the co-defendants submit that Rivera acted with objective reasonableness thus entitling him to qualified immunity.

As to these co-defendants, the evidence of record demonstrates a complete dearth of evidence to show that Quiles' political affiliation to the NPP was a substantial or motivating factor in Rivera's decision to terminate her from employment.  There is no evidence that plaintiff's political affiliation was at all taken into consideration in the decision to terminate her.  Similarly, there is nothing, other than Quiles' conclusory allegations, from which a reasonable trier of fact could conclude that political affiliation was a substantial or motivating factor in Rivera's decision.  See, e.g., Vázquez-Valentín v. Santiago-Díaz, 385 F.3d 23, 37-38 (1st Cir. 2004); González-de-Blasini v. Family Dep't, 377 F.3d 81, 85-86 (1st Cir. 2004).  This is the classic case in which a public employee attempts to use the bare fact of his affiliation to a rival political party to adduce a political discrimination claim.  But in this Circuit, it is well-settled that "[m]erely juxtaposing a protected characteristic--someone else's politics--with the fact that plaintiff was treated unfairly is not enough to state a constitutional claim." Correa-Martínez v. Arrillaga-Beléndez, 903 F.2d 49, 58 (1st Cir. 1990).  That is not to say that a public employee such as Quiles needs to present direct evidence of political animus.  Circumstantial evidence is acceptable as long as it is sufficient "to take the asserted claim out of the realm of speculative, general allegations." Kauffman v. P.R. Tel. Co., 841 F.2d 1169,

CIVIL 03-1272 (SEC)                    17

1173 n.5 (1ˢᵗ Cir. 1988).  But in this case, the evidence of record is insufficient to show political reasons as the motivating factor behind Quiles' termination.  <u>See</u> <u>Rivera-Cotto v. Rivera</u>, 38 F.3d at 614 ("Without more, a nonmoving plaintiff-employee's unsupported and speculative assertions regarding political discrimination will not be enough to survive summary judgment.").  She therefore fails to establish a prima facie case of political discrimination.

Nevertheless, even if I were to assume that a prima facie case of political discrimination has been established, co-defendants Rivera and Piñot are still entitled to summary judgment because the undisputed evidence shows Rivera would have taken the same action against Quiles regardless of political affiliation.  <u>Mt. Healthy</u> <u>City Sch. Dist. Bd. of Educ. v. Doyle</u>, 429 U.S. at 286-87.  The Supreme Court has stated that:

> [P]roof of an improper motive is not sufficient to establish a constitutional violation--there must also be evidence of causation. Accordingly, when a public employee shows that protected [conduct] was a "motivating factor" in an adverse employment decision, the employer still prevails by showing that it would have reached the same decision in the absence of the protected conduct.

<u>Crawford-El v. Britton</u>, 523 U.S. 574, 593 (1998) (citing <u>Mt. Healthy City Sch. Dist.</u> <u>Bd. of Educ. v. Doyle</u>, 429 U.S. at 287).

In that respect, the First Circuit has recently observed:

> [A] plaintiff's political affiliation may have been an employer's motivating reason for terminating the plaintiff. Nevertheless, the employer may still defeat liability for that

CIVIL 03-1272 (SEC)                    18

> termination by meeting its dual burden under <u>Mt. Healthy</u>
> --by proving, for example, that the plaintiff had been caught
> stealing from the employer and that the employer fires
> every employee who steals from it.

<u>Sánchez-López v. Fuentes-Pujols</u>, 375 F.3d at 131 (footnote omitted).

In this case, the undisputed evidence of record shows that at the time co-defendant Rivera became the Secretary of the Department, Quiles' career position was Executive Director III at the Bureau. (Co-defendants' Statement of Uncontested Facts, Docket No. 80, ¶ 2.) Prior to that, she had acted as Interim Director of the Bureau. (<u>Id.</u> ¶¶ 2-3.) The Department commenced internal as well as external audits of the Bureau. (<u>Id.</u> ¶ 3 and Exs. D, E.) Based on the results of said audits, which reflected among other things that Quiles incurred in a conflict of interest by approving salary incentives to two companies that employed her minor daughters (<u>see</u> <u>id.</u>, Ex. D), co-defendant Rivera, via letter dated February 25, 2002, suspended Quiles from employment awaiting an administrative disciplinary proceeding. (Co-defendants' Statement of Uncontested Facts, Docket No. 80, ¶ 4.) Quiles was terminated from employment effective March 18, 2002, after being afforded a pre-termination hearing where it was determined and confirmed that she violated the Department's Personnel Regulations for Career Employees and that she incurred in a conflict of interest in contravention of Puerto Rico's Public Personnel and Governmental Ethics Law. (<u>Id.</u> ¶ 5.) Once again, the charges brought against Quiles came about as a result of the audits conducted. Said audits specifically revealed that

CIVIL 03-1272 (SEC)                    19

the possibility of a conflict of interest had been reported in February of 2000 in connection with two contracts with New Millennium Products, Inc. and Compañía Teatral Ponceña, Inc. (Id. ¶ 8.)   These two companies received employment incentives from the Bureau under Quiles' direction and also hired Quiles' daughters for projects in which said companies had received the Department's economical assistance.  (Co-defendants' Statement of Uncontested Facts, Docket No. 80, ¶ 8.) And such conduct was the principal or at least one of the main reasons for Quiles' termination.   Finally, it is also undisputed that Quiles was not the only career employee of the Department who was dismissed after internal and external audits revealed some irregularities.  (Id. ¶ 14.)   One Mr. Carlos Ortiz Meléndez[6] was dismissed after it was determined that he carried out his employment in a negligent fashion.  Mr. Ortiz is a member of the PDP, the same political party to which the co-defendants allegedly belong.  (Id.)

          In view of the above undisputed facts, I find that the defendants have shown that regardless of Quiles' political persuasions, they would have dismissed her in any event given the findings of the audits conducted and the conflict of interest of which

_____

[6]Mr. Ortiz filed an action in this court, Civil No. 03-1325 (SEC) also claiming that his termination was politically motivated.  This court, by way of opinion and order issued on December 13, 2004 (Civil No. 03-1325 (SEC), Docket No. 61), dismissed Mr. Ortiz' action in its entirety finding inter alia that the defendants in that case (Rivera, Piñot and Martínez) were entitled to judgment as a matter of law on plaintiff's political discrimination claim and protected by qualified immunity. Even though plaintiff in that case belonged to the PDP, he claimed political discrimination arguing that he was perceived by co-defendants as favoring members of the NPP.  (Id. at 8.)

CIVIL 03-1272 (SEC)                    20

she was found guilty. From the evidence it also appears that the Department applied its policy of dismissing employees found to have committed the sort of violation Quiles was charged with, because they also dismissed an employee, Carlos Ortiz Meléndez, who was a member of the PDP.   Under this circuit's caselaw, co-defendants can defeat liability as a matter of law.  See Sánchez-López v. Fuentes-Pujols, 375 F.3d at 131 (explaining that an employer defeats liability under Mt. Healthy if it proves that it takes corrective action against every employee similarly situated regardless of any political animus that might have been involved in the decision).  Finally, I add that as to co-defendant Piñot specifically, there is scanty evidence of his personal involvement in any adverse employment action against Quiles and that under the facts of this case the co-defendants are likely shielded from liability by qualified immunity although I need not address these issues. As to these co-defendants, it is also my recommendation that summary judgment be GRANTED.

C.  Martínez' Motion for Summary Judgment (Docket No. 82)

        As to co-defendant Martínez and his motion for summary judgment, I note that he advances substantially the same arguments advanced by co-defendant Cruz. Thus, I find that my discussion of co-defendant Cruz' motion for summary judgment is applicable to co-defendant Martínez in that the evidence submitted by Quiles is insufficient to show personal involvement in the ultimate adverse employment action: her dismissal. I add that while Quiles adduces: (1) that Martínez never said

CIVIL 03-1272 (SEC)                    21

anything to her at the beginning when the latter assumed the Bureau's direction; (2) that he sporadically assigned things to do but never formally explained her duties to her; and (3) that he allegedly assigned her to an office without a telephone or computer, she still fails to show that even assuming such conduct qualifies as an adverse employment action, that political affiliation was a substantial or motivating factor in said decision.  Co-defendant Martínez is also entitled to judgment as a matter of law and his motion for summary judgment should be GRANTED.

    D.  <u>Supplemental Claims</u>

      Having recommended dismissal of all federal claims in the complaint against all co-defendants, I also recommend dismissal of Quiles' state-law causes of action. See <u>González-De-Blasini v. Family Dep't</u>, 377 F.3d at 89 ("Under 28 U.S.C. § 1367, '[a] district court may decline to exercise supplemental jurisdiction' if 'the district court has dismissed all claims under which it has original jurisdiction.'"); <u>see also</u> <u>Claudio-Gotay v. Becton Dickinson Caribe, Ltd.</u>, 375 F.3d 99, 104-05 (1st Cir. 2004), <u>cert. denied</u>, 125 S. Ct. 1064 (2005); <u>Rodríguez v. Doral Mortgage Corp.</u>, 57 F.3d 1168, 1177 (1st Cir. 1995) ("As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims.").  Dismissal of said claims should be without prejudice.

CIVIL 03-1272 (SEC)                        22

## V.  CONCLUSION

In view of the above, it is my recommendation that co-defendants' motions for summary judgment all be GRANTED and that the complaint be dismissed in its entirety.  Dismissal of federal claims should be with prejudice while dismissal of state-law causes of action should be without prejudice.

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation.  The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections.  Failure to comply with this rule precludes further appellate review. See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

At San Juan, Puerto Rico, this 23rd day of August, 2005.


                                    S/ JUSTO ARENAS
                              Chief United States Magistrate Judge